IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BAHAADUR ABDULAHAD, and ) <br> JENNIFER McMANUS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs ) <br> ) <br> CHESTERFIELD COUNTY SHERIFF'S ) <br> DEPARTMENT, et al, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No.: 4:06-cv-2642-TLW-TER <br><br><br><br><br><br> REPORT AND RECOMMENDATION |

## I. PROCEDURAL BACKGROUND

The plaintiffs filed this action under 42 U.S.C. § 1983[1] on September 25, 2006. Plaintiffs filed a motion for summary judgment on February 6, 2008. Defendants filed a response in opposition on March 7, 2008. On March 7, 2008, defendants filed a motion for summary judgment along with supporting memorandum. (Doc. #76).  Because plaintiffs are proceeding pro se, they were advised on or about March 10, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of their complaint. Plaintiffs filed a response in opposition on April 30, 2008, and an amended response on May 15, 2008. (Doc. #104). Defendants filed a reply on May 19, 2008. Plaintiffs filed a sur-reply on May 30. 2008.

Defendants assert that defendants "John Doe C", "John Doe", and "John Doe E" should be

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

dismissed as they are not properly identified and have not been served.[2] The undersigned agrees and recommends that these defendants be dismissed.

## II.  DISCUSSION OF ALLEGATIONS

In the complaint, plaintiffs allege that the execution of a search warrant and two arrest warrants by the Chesterfield County Sheriff's Deputies violated their constitutional rights. The arrests warrants were not for the plaintiffs but for Adrian McManus, plaintiff Jennifer McManus' son and plaintiff Abdulahad's step-son. Plaintiffs also allege malicious prosecution, abuse of process, conspiracy and intentional infliction of emotional distress.

Defendants filed a motion for summary judgment asserting defendant Page applied for a search warrant based upon reliable information that a felony had occurred at the residence within the prior seventy-two hours and had probable cause at the time he applied to Magistrate Elizabeth F. Gulledge for a search warrant. Defendants further assert that both the scope and duration of the search of plaintiff's residence were reasonable. Defendants further contends that plaintiff Abdulahad was not even present during the execution of the search warrant. Additionally, defendants assert they are not "persons', within the meaning of 42 U.S.C. §1983, they are not liable for a loss resulting for a judicial action, that plaintiffs have failed to establish a malicious prosecution claim, a conspiracy claim, they are entitled to qualified immunity, and that plaintiffs are not entitled to damages for

---

[2] The plaintiff's attention is directed to Rule 4(m) of the Federal Rules of Civil Procedure, which provides that unless a defendant is served within 120 days after the complaint is filed, this court may dismiss an action without prejudice as to that defendant.  Case law interpreting Rule 4(m) or its predecessor, Rule 4(j), has held that a complaint must be dismissed, absent a showing of good cause, if the complaint is not served within 120 days after it is filed.  *See Mendez v. Elliot*, 45 F.3d 75, 78-80 (4th Cir. 1995)(collecting cases).

emotional distress.

## III.  SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

fact." In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## **IV. ARGUMENT**

As previously stated, defendants filed a motion for summary judgment and submitted several affidavits in support thereof. Defendants submitted the affidavit of James Dixon ("Dixon") who attests that he is currently employed by the Chesterfield County Sheriff ("CCS") as a Major and was employed as a Captain and the ranking deputy involved at the time of the alleged incident. Dixon avers that he has personal recollection of the events surrounding the execution of the search warrant and arrest warrant of Adrian McManus on September 25, 2003. Dixon attests that the residence searched was also the residence of the plaintiffs who are the mother and step father of Adrian McManus. Dixon avers that he was present at all times during the execution of the search and arrest warrants and he had the opportunity to observe the actions of the other named defendants who were involved in the execution of the warrants including the actions of defendants Page, Quick, and Mangum. Dixon attests that a "knock and announce" entry was performed at approximately 10:30 a.m. on September 25, 2003, meaning that immediately upon entering the residence it was announced that they were from the Sheriff's Department and that they had a search warrant. Dixon avers that as soon as all the parties in the residence were identified and secured, the contents of the search warrant were read aloud by then Captain Ricky Quick. Dixon states that the search of the property by all defendants who were present, including himself, were reasonable in all respects. Dixon attests that they were in the residence no more than an hour and the majority of the search

4

focused on Adrian McManus' bedroom. Dixon avers that before they departed the residence they left a copy of the search warrant on a table within the residence. Dixon attests that all defendants involved limited the scope of their search to what was reasonably necessary to effectuate the purpose of the search warrant and the search revealed the presence of marked currency that matched the currency that was given to the confidential informant to purchase crack cocaine from the residence. Dixon attests that plaintiff Abdulahad was not present at anytime during the execution of the search and arrest warrants. (Dixon affidavit, document #76-3).

Defendants also submitted the affidavit of Chris Page ("Page") who attests that he is currently employed by the CCS since 1992 and was Sergeant over narcotics in or about September 24, 2003. Page attests that he has the personal recollection of the event surrounding the securing and execution of the search warrant for the residence of Adrian McManus. Page asserts the search and arrest warrants were obtained from Magistrate Elizabeth F. Gulledge based upon the information set forth in affidavits from him that are attached to warrants. (Search warrant attached to the affidavit). Page attests that the information contained in those affidavits is based on his personal knowledge as the one who supervised the controlled buys of crack cocaine by a confidential informant from the residence listed in the affidavits. Page avers the search warrant in combination with the affidavits set forth specific location to be searched as well as a description of the property sought. Page attests that the search of the property produced tangible items that corroborated the information provided by the confidential informant in that at least one of the bills seized during the execution of the search warrant matched the marks placed on the bills given to the confidential informant to purchase crack cocaine at the residence. Page avers that probable cause existed to arrest Adrian McManus at the time the two arrest warrants were obtained and on September 25, 2003, when the arrest warrants

were executed. Page further attests that probable cause existed to search the residence of Adrian McManus, also the residence of the plaintiffs, on September 20, 2003, when the search warrant was obtained, and on September 25, 2003, when the search warrant was executed. Page avers that he was present at all times during the execution of the search and arrest warrants and he had the opportunity to observe the actions of the other named defendants who were involved in the execution of the search and arrest warrants including the actions of defendants Ricky Quick, James Dixon, and Tommy Mangum. Page attests that they performed a "knock and announce" and, as soon as all parties in the residence were identified and secured, the contents of the search warrant were read aloud by one of the other defendants. Page avers that it is normal policy that the officer signing the affidavit of the search warrant, in this case himself, would not read the contents prior to executing the search warrant. Page attests that the searches of the property by all defendants present were reasonable in all respects including the scope and duration. Page attests that they were in the home for no more than one hour and the majority of the search focused on Adrian McManus' bedroom. Page attests that no property was damaged during the course of the search and the conduct of all defendants was reasonably necessary to effectuate the purpose of the search warrant and the search revealed evidence that corroborated the information provided to the Magistrate in the affidavits attached to the search and arrest warrants. Page attests that plaintiff Bahaadur Abdulahd was not present at anytime during the execution of the search and arrest warrants. Page avers that Adrian McManus was subsequently indicted by the Chesterfield County Grand Jury for distribution of crack cocaine and entered a guilty plea on January 7, 2004. Page attests that all actions undertaken with obtaining and executing the search and arrest warrants were conducted in good faith and he did not knowingly violate any constitutional right of either plaintiff during his involvement in obtaining and

executing the search and arrest warrants. (Page affidavit, docket #76-4).

Defendants also submitted the affidavit of Elizabeth F. Gulledge ("Gulledge") who attests that she is employed by the South Carolina Judicial Department as a Summary Court (Magistrate) Judge for Chesterfield County and has been so employed since June 1981. Gulledge avers that she reviewed the search and arrest warrants and attached accurate copies that were contained in her file and executed by her on the dates set forth in the documents. Gulledge also attests that the form of the search warrant and arrest warrant that she attached to her affidavit are in the form as prescribed by the Attorney General of the State of South Carolina and in compliance with S. C. Code Ann. §17-13-160. (Gulledge affidavit, document #76-5).

Defendants attached copies of the arrest warrants, search warrant, the affidavit for the warrants, and the indictment of Adrian McManus.

Plaintiffs filed a response in opposition to the motion for summary judgment and attached their affidavits and the affidavits of the other people present in the residence during the search. In the affidavits, the parties assert that the officers did not follow the knock and announce rule, that the entire house was searched, that it was not the residence of Adrian McManus who lived with his father, and that the officers did not leave a copy of the search warrant upon leaving. However, in the affidavits submitted by the plaintiffs, the parties have asserted that Adrian McManus was at the residence and was handcuffed in one of the rooms while the search was executed. (See plaintiffs' response and exhibits).

## V.  ANALYSIS/PROBABLE CAUSE

The Fourth Amendment prohibits general and open-ended search warrants and requires that

a search warrant particularly describe both the place to be searched and the persons or things to be seized. *See* Dalia v. United States, 441 U.S. 238, 255 (1979). To satisfy the Fourth Amendment's reasonableness requirement, a search or seizure must be "accomplished pursuant to a judicial warrant issued upon probable cause." Skinner v. Railway Labor Executives' Ass'n, 489 U.S., 602, 619 (1989). An impartial judicial officer must assess whether the police have probable cause to conduct a search or to seize evidence. Warden v. Hayden, 387 U.S. 294, 301-02 (1967). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place."  *See* Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when "there are reasonably trustworthy facts which, given the totality of circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of the crime and will be present at the time and place of the search. United States v. Suarez, 906 F.2d 977, 984 (4th Cir. 1990).

A facially valid search warrant is found to violate the Fourth Amendment if it contains false or misleading statements that are "necessary to the finding of probable cause." Wilkes v. Young, 28 f.3d 1362, 1365 (4th Cir. 1994), *cert. denied*, 513 U.S. 1151 (1995)(quoting Franks v. Delaware, 438 U.S. 154, 156 (1978)). The party challenging the warrant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks at 156.

Plaintiffs have failed to show a lack of probable cause. Magistrate Judge Gulledge found that defendants had probable cause to apply for and obtain the search warrant. Based on the affidavit submitted by Officer Page to Magistrate Judge Gulledge, a controlled buy by a confidential informant had been made at the residence within seventy-two hours. In the affidavit, Page asserted

that the confidential informant was briefed on the buy location, wired with electronic surveillance equipment which was monitored during the controlled buy, searched before and after the controlled buy, given marked county funds to make the drug purchase and observed the going to and from the buy location. Page also asserted in this affidavit for the application of the search warrant that the confidential informant went to the listed residence and purchased a quantity of crack cocaine which was turned over to Officer Chris Page who field tested the drugs and found them to be positive for crack cocaine. Defendant Page applied to Magistrate Gulledge for a search warrant on September 20, 2003. On September 18, 2003, and September 19, 2003, defendant Page had previously been issued arrest warrants by Judge Gulledge for Adrian McManus for the distribution of crack cocaine. Judge Gulledge found probable cause for the search warrant and issued same. Magistrate Judge Gulledge was an impartial judicial officer who assessed whether there was probable cause to conduct a search or to seize evidence. Warden v. Hayden, supra. The grand jury indicted Adrian McManus for distribution of crack cocaine for which he pleaded guilty. Although plaintiffs dispute the validity of the information relied on, they have not made a substantial preliminary showing that any false statements were included in the affidavit or that if there was any false information in the warrant affidavits it was done knowingly or intentionally with reckless disregard for the truth. Plaintiffs have made no showing that defendant Page or any of the defendants did not have probable cause or that false information was given to obtain the warrants. Based on all of the above, plaintiff fails to create an issue of fact as to the existence of probable cause to obtain the warrants that resulted in the search of plaintiffs' residence. Additionally, neither of the plaintiffs were arrested.

As to plaintiffs allegations that the search warrant was issued subsequent to the search of the residence on September 25, 2003, or that the copy provided to plaintiff during the discovery process

9

in this action was altered, defendant Magistrate Judge Gullege submitted her affidavit attesting that the copies attached to her affidavit are accurate copies of the original and that the documents were executed on the date indicated.

Additionally, plaintiffs allege that during the course of the search of their residence, defendants made everyone in the house get out of bed and all go into the "front room" and searched the bedrooms, closets, drawers, under the beds, and all through the house not allowing them to make a phone call or get anything from the baby bag. Defendants argue that the right of police officers to detain occupants of a house while they execute a search warrant cannot be questioned. Michigan v. Summers, 452 U. S. 692 (1981).

When a warrant authorizes a law enforcement officer to enter a premises to conduct a search, the warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Mazuz v. Maryland, 442 F.3d 217 (4th Cir. 2006) *quoting* Summers, 452 U.S. at 705, 101 S.Ct. 2587. "Inherent in [the] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention," including the use of handcuffs.) Id., *quoting* Muehler v. Mena, 544 U.S. 93, 125 S.Ct. 1465, 1470, 161 L.Ed.2d 299 (2005). Defendants identified and secured all the parties of the residence and were in the residence for no more than one hour. (Defendants' affidavits). As defendants are allowed to detain the occupants of the premises while a proper search is conducted, defendants are entitled to summary judgment with regard to this claim.

As to plaintiffs allegations that the officers did not leave a copy of the search warrant upon leaving the residence or a copy of what was taken, the argument fails. The failure to leave a copy of a search warrant does not render the search unreasonable under the Fourth Amendment. See Darmon

v. Burgess, 388 F.3d 609 (8th Cir. 2004)(failure of officers to leave a copy of the search warrant did not warrant the search unreasonable); United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000) (failure to leave either a copy of the warrant or a receipt for the items taken did not render the search unreasonable under the Fourth Amendment).

As to plaintiffs allegations concerning how the warrant was executed, the constitution does not specifically address how an officer should execute a search warrant but a warrant that is reasonably executed will withstand constitutional scrutiny. See Dalia v. United States, 441 U.S. at 238. So long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution. Id. at 257. Plaintiffs have not provided any evidence that the defendant officers' conduct was outside the boundaries of reasonableness. Based on a review of the search warrant issued by the Magistrate Judge, the officers did not go outside the boundaries of the warrant in executing the search, including searching the entire residence. Therefore, summary judgment should be granted to defendants with respect to these allegations.

### VI. CONSPIRACY

Plaintiffs allege a conspiracy on the part of the defendants. Defendants argue that plaintiffs have failed to establish claims of conspiracy against the defendants.

"To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." Marshall v. Odom, 156 F.Supp. 2d 525, 532 (D. MD. 2001), citing Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421

(4th Cir.1996). To meet the "weighty burden to establish a civil rights conspiracy[,]" .... "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id. "Acquiescence can amount to a conspiracy agreement when ...one ...officer watches an open breach of the law and does nothing to seek its prevention." Hafner v. Brown, 983 F.2d 570, 578 (4th Cir.1992). Nonetheless, isolated acts by defendants that fail to evidence a shared understanding will not suffice to survive a motion for summary judgment. See Hinkle, 81 F.3d at 421-23. Plaintiffs have failed to provide specific evidence of a conspiracy.

## VII.  QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting

> damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate

> clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## VIII. IMMUNITY

The defendants contend that they are not "persons" within the meaning of 42 U.S.C. §1983. Defendants argue that plaintiff seeks damages against them only in their capacities as deputy sheriffs. Thus, defendants assert that since they were all acting as sheriff's deputies, all are, therefore, state employees not liable under 42 U.S.C. §1983. Furthermore, defendants argue that Chesterfield County Sheriff's Department is not a person subject to suit under §1983.

The Chesterfield County Sheriff's Department is immune from suit under the Eleventh Amendment. Sheriff's Departments in South Carolina are state agencies, not municipal departments. See Section 23-13-550, South Carolina Code of Laws; and 1975 S.C.Att'y.Gen'l.OP. No. 47 (January

22, 1975); and Section 23-13-10 of the South Carolina Code of Laws, which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. *See also* Allen v. Fidelity and Deposit Company, 515 F.Supp. 1185, 1189-1191 (D.S.C.1981) (County cannot be held liable for actions of deputy sheriff because deputy sheriffs serve at pleasure of the Sheriff, not the County), *affirmed* , 694 F.2d 716 (4th Cir.1982) [Table]; and Comer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (suit against Sheriff of Greenville County: " ... Sheriff Brown is an arm of the State."). Indeed, any damages to the plaintiff, if awarded in this case, would be paid by the South Carolina State Insurance Reserve Fund. Comer v. Brown, 88 F.3d at 1332 ("Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund.").

In Gullege v. Smart, 691 F. Supp. 947 (D.S.C. 1988), the court undertook an analysis of the status of South Carolina sheriffs. Based on the following facts, the court concluded that South Carolina Sheriffs were state officials: (1) the state constitution established the office of sheriff and provided that the General Assembly determines a sheriff's powers and duties; (2) state law sets out the sheriff's duties and compensation; (3) the sheriff's arrest powers relate primarily to state offenses; and (4) the Governor is empowered to fill vacancies or remove the sheriff for misconduct. See Id. at 954. The court also found that deputy sheriffs are more closely connected to the state than the county. See Id. at 955. Deputy sheriffs are agents of the sheriff and "are not employees of the county and [are] not covered by county personnel policy and procedure." Cone v. Nettles, 417 S.E.2d 523, 525 (S.C.1992).

As previously discussed, the Fourth Circuit held that South Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the Eleventh Amendment. Cromer v.

Brown, Id.  There is no dispute that the defendants were employees of the Sheriff of Chesterfield County and, thus, are all state officials acting in their official capacity. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages. Accordingly, it is recommended that the defendants who are/were employees of the Sheriff of Chesterfield County and the Chesterfield County Sheriff's Department are state officials and are not liable for monetary damages in their official capacities.

## IX.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## X.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As previously stated, plaintiff has filed a motion for summary judgment. (Document #61 ). Defendant filed a response. Based on the above analysis, it is recommended that plaintiff's motion for summary judgment be denied.

## XI. CONCLUSION

For the above reasons, it is recommended that defendants' motion for summary judgment

(document #76) be GRANTED and plaintiffs' motion for summary judgment (document #61) be DENIED.

IT IS FURTHER RECOMMENDED that defendants "John Doe C", "John Doe", and "John Doe E" be dismissed as they have not been properly identified and have not been served and that all other outstanding motions be deemed MOOT.

                                            Respectfully submitted,

                                            s/Thomas E. Rogers, III
                                            Thomas E. Rogers, III
                                            United States Magistrate Judge

August 6, 2008
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**